**Kenneth A. HULL, Plaintiff,**

v.

**CENTRAL TRANSPORT, INC. and Charles Garavaglia, Defendants.**

Civ. No. F 85–147.

United States District Court, N.D. Indiana, Fort Wayne Division.

Feb. 18, 1986.

---

S. Sargent Visher and Fergus Kear, Choate, Visher & Haith, Indianapolis, Ind., for plaintiff.

Thomas M. Kimbrough, Barrett, Barrett & McNagny, Fort Wayne, Ind., Timothy K. Carroll, Dykema, Gossett, Spenser, Goodnow & Trigg, Detroit, Mich., for defendants.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a motion for summary judgment filed by the defendants Central Transport, Inc. ("Central") and Charles Garavaglia ("Garavaglia"). The plaintiff ("Hull") has responded to the motion, and the defendants have filed a reply. For the following reasons,

the motion for summary judgment will be granted in part and denied in part.

This cause arises out of events surrounding the termination of Hull from his job with Central in March, 1983. Hull's complaint alleges five causes of action: breach of the collective bargaining agreement between Central and Hull's union; defamation by Garavaglia during grievance proceedings under the agreement; violation of an Indiana statute requiring an employer to provide written reasons for discharge; violation of the Indiana Blacklisting statute; and failure to pay Hull's wages upon termination on time. Central and Garavaglia now move for summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court must keep in mind that the entry of summary judgment terminates the litigation, or an aspect thereof, and must draw all inferences from the established or asserted facts in favor of the non-moving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985). The non-moving party's reasonable allegations are to be accepted as true for purposes of summary judgment. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218–19 (7th Cir.1984). A party may not rest on the mere allegations of the pleadings or the bare contention that an issue of fact exists. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Atchison,*

*Topeka & Santa Fe Railway Co. v. United Transportation Union*, 734 F.2d 317 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1983). *See generally* C. Wright, *Law of Federal Courts*, § 99 (4th ed. 1983); 6 *Moore's Federal Practice*, § 56.15 (2d ed. 1984).

Thus, the moving party must demonstrate the absence of a genuine issue of material fact. Even if there are some disputed facts, where the undisputed facts are the material facts involved and those facts show one party is entitled to judgment as a matter of law, summary judgment is appropriate. *Egger v. Phillips*, 710 F.2d 292, 296–97 (7th Cir.1983); *Collins v. American Optometric Assn.*, 693 F.2d 636, 639 (7th Cir.1982). *See also Bishop v. Wood*, 426 U.S. 341, 348, 348 n. 11, 96 S.Ct. 2074, 2079, 2079 n. 11, 48 L.Ed.2d 684 (1976).

Under these principles, the relevant facts of this case appear to be as follows. In March 1983, Central was a signatory to a collective bargaining agreement ("Agreement") with Local 414 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers ("Union"). Hull was a member of the Union, and was employed by Central as an over-the-road truck driver. On March 11, 1983, Hull got into a fight with another driver over who would get to haul an empty trailer from a Michigan plant, and Hull suffered injuries as a result. On March 14, 1983, Garavaglia, Central's Vice President for Labor Relations, sent Hull a telegram saying that Hull was being terminated for assaulting another employee.

Hull filed a grievance pursuant to the grievance mechanisms under the Agreement. The grievance was denied at the first level, and the Union appealed to the Motor Carriers Labor Advisory Grievance Committee ("MCLAGC"), which is a Joint Committee within the meaning of the National Freight Master Agreement under which the Agreement had been negotiated. At a hearing before the MCLAGC on March 30, 1983, Garavaglia made statements about Hull's work history which Hull claims were defamatory. The

MCLAGC denied Hull's grievance, and Hull's grievance opportunities were exhausted at that point.

Hull also claims that Garavaglia made false statements to Detroit Police Detective Raymond Trautz, who was investigating the fight, and to the Michigan Employment Security Commission during hearings on Hull's application for unemployment benefits.

In March 1984, Hull filed suit against the Union for breach of its duty of fair representation, and against Central for breach of the Agreement, in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. This court held that the suit was barred by the six month statute of limitations for § 301 suits. *Hull v. Local 414 of International Brotherhood of Teamsters*, 601 F.Supp. 869 (N.D.Ind.1985).

On March 18, 1985, Hull filed this action against Central and Garavaglia in the Allen Superior Court, which was removed to this court. Count I of the complaint alleges that several provisions of the Agreement relating to notice and warnings prior to termination, as well as the appropriate body to hear an appeal of a first level denial of a grievance, were breached by Central. Count II alleges that Garavaglia's statements to MCLAGC, the Detroit police officer and the Michigan Employment Security Commission were defamatory. Count III alleges a violation of I.C. 22–6–3–1, which requires an employer to issue a signed letter setting forth a statement of the cause for discharge of a former employee. Count IV asserts a violation of I.C. 22–5–3–1, the Indiana Blacklisting Statute, which prohibits employers from preventing former employees from obtaining employment. Count V claims a violation of I.C. 22–2–9–2, which requires payment of wages of a discharged employee on the pay day for the last pay period the employee worked.

Central and Garavaglia move for summary judgment. They argue that Hull's state law claims are preempted by federal labor law, in effect leaving only Count I. On the merits of the claims, they argue that the

grievance proceedings are binding on Hull, and thus Count I mandates judgment for the defendants. As for the merits of Count II, Garavaglia asserts privileges for making his statements. The defendants argue that Count III must fail both because Hull received written notice in the telegram and because I.C. 22–6–3–1 is a penal statute. They contend that the allegations of the complaint do not support a claim under the blacklisting statute, and argue that Hull was in fact paid his final wages on April 14, 1983 so as to satisfy the provisions of I.C. 22–2–9–2.

The court begins with the defendants' preemption argument.

## I. PREEMPTION OF STATE LAW CAUSES OF ACTION

Section 301 of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties....

The Supreme Court has recently made clear that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. ——, ——, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985), quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). The doctrine is motivated by concern for uniformity in the law applied to labor contracts. *Id.* Thus, this doctrine of preemption requires that suits alleging breach of a collectively bargained contract be brought under § 301 and decided by reference to federal labor law.

The scope of the preemption doctrine extends beyond actions alleging breaches of the collective bargaining agreement; actions which relate to what the parties to a labor agreement agreed upon, or the legal consequences which were to flow from what was agreed upon, must be decided by reference to uniform federal law. *Lueck*, 471 U.S. at ——, 105 S.Ct. at 1911. However,

not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of federal labor law ... In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Id.* at ——, 105 S.Ct. at 1912. The *Lueck* Court has described the proper methodology for analyzing whether a state tort claim is preempted: the court must look to see whether the state law claim

confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.

*Id.*

■ The court begins its preemption analysis by noting that Count I, to the extent that it constitutes a state law cause of action, is clearly preempted by § 301. In fact, it appears to be a § 301 claim without calling itself one.[1] Count I alleges that certain provisions of the contract regarding notice and the grievance procedures were breached. That is clearly a claim for breach of contract, and the *Lueck* Court holds that such a state law claim is preempted by § 301. Hull attempts to ar-

---

1. The Seventh Circuit has made it clear that a plaintiff's attempt to cast a claim in state law terms is not determinative when the claim is in fact one under § 301. *Oglesby v. RCA Corp.*, 752 F.2d 272, 276–77 (7th Cir.1985).

gue that this is a state law claim outside of § 301 because of the manner in which the breaches occurred, but evaluation of the claim is "inextricably tied" to the contract—to determine whether there was a malicious breach of the Agreement's provisions concerning notice prior to termination, the court would have to consider whether the provision itself was breached, which would involve consideration of a term of the contract. Thus, the court finds that Count I is in fact a § 301 claim, and any state law claim implied in it is preempted by § 301.

■ Count II relates to Garavaglia's defamation of Hull. The defendants attempt to argue that preemption applies because the statements were made in the context of arbitration mandated by the contract or else in the course of Garavaglia's performance under the contract. Concerning the comments made in the course of arbitration proceedings, the defendants' position is well taken. The concern which animates the preemption doctrine is the need for certainty in the operation of the agreement so as to prevent an erosion in the willingness of employers and unions to agree to terms involving arbitration or judicial resolution of disputes. *Lueck,* 471 U.S. at ——, 105 S.Ct. at 1911. The preemption doctrine posits that unions and employers would be much less willing to bargain when the fruits of their negotiations are subject to the uncertainty caused by outside attempts to assess liability for acts permissible under the agreement. This does not allow the parties to circumvent all state law requirements, *Lueck,* 471 U.S. at ——, 105 S.Ct. at 1911–12. However, when unions and employers take the favored step of establishing grievance procedures in order to avoid the need for judicial intervention, that negotiated choice should not be diluted by intrusions of potentially inconsistent state law. Parties to collective bargaining agreements should be able to rely on their bargain and the principles of § 301. To

hold otherwise would allow the threat of defamation suits for comments made during grievance hearings to introduce an element of uncertainty into the grievance process as well as chilling the advocacy of the positions of the parties. As a result, parties would be much less willing to agree to grievance mechanisms that are fraught with potential liability under state tort law. Such a result would fly directly in the face of the federal labor policy, which encourages settlement of labor disputes through nonjudicial means.

An argument can be made that defamation suits are not directly related to the contract. The Supreme Court has stated that a libel suit is a "merely peripheral concern under the Labor Management Act." *Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 61, 86 S.Ct. 657, 662, 15 L.Ed.2d 582 (1966). However, that case does not operate to place defamation suits beyond the reach of the preemption doctrine. First, *Linn* dealt with the exclusive jurisdiction of the National Labor Relations Board, not with § 301 preemption. Second, *Linn* must be read in light of the *Lueck* Court's more recent pronouncement on the reach of the preemption doctrine. The doctrine serves to thwart the undermining of the collective bargaining process by preventing state tort theories from ignoring the process of dispute resolution hammered out in the negotiating process. State law causes of action which adversely affect the grievance process only serve to undermine the entire collective bargaining process. That is why, as will be more fully discussed below, courts are willing to recognize an absolute privilege for statements made in the grievance process—chilling advocacy in grievance proceedings jeopardizes the entire contract process. Thus, the court finds that in the narrow instance of defamation suits brought for statements made in the grievance process, the detrimental effect of a defamation suit on the grievance process mandates preemption of such a suit.[2]

---

**2.** Additional support for this conclusion is found in an unpublished decision cited by the defendants, *Green v. Hughes Aircraft Co.,* 630

F.Supp. 423 (S.D.Cal.1985). *Green* involved statements made by cafeteria workers to company investigators about the plaintiff's alleged theft

■ As for the defamation claims about Garavaglia's comments to Detective Trautz and the Michigan Employment Security Commission, the preemption argument stretches too far. The defendants claim that Garavaglia was acting within his capacity under the collective bargaining agreement. However, the fact that the Agreement recognizes the right of Central to establish management positions and operate the company does not mean that an act done in the course of managing the company involves the interpretation of the Agreement so as to mandate preemption. Garavaglia's "right" to make statements to the police or the Commission is not set forth in or governed by the Agreement. Nor can it be said that the grievance process would suffer as a result of allowing the defamation claim in this instance. The court therefore finds that the defamation claims concerning the statements to police and the Employment Security Commission are not preempted.

■ Count III alleges a violation of I.C. 22–6–3–1, which provides:

Whenever any employee of any person, firm or corporation doing business in this state shall be discharged or voluntarily quits the service of such person, firm or corporation, it shall be the duty of such person, firm or the officer of the corporation having jurisdiction over such employee, upon written request of such employee, to issue such employee a letter, duly signed by such person, firm or officer, setting forth the nature and character of service rendered by such employee and the duration thereof, and truly stating for what cause, if any, such employee has quit or has been discharged from service. . . .

Hull claims that he made a written request as provided under this statute, but that Central did not provide him with the written notice required.

Central argues that Count III is preempted because the same protection is provided under the terms of the Agreement. The general rule is that when a collective bargaining agreement provides protection which is the same as or greater than that provided by state tort law, federal law concerning the collectively bargained agreement will preempt the state cause of action. *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 668 (9th Cir.1985); *Marine Transport Lines, Inc. v. International Organization of Masters, Mates & Pilots*, 609 F.Supp. 282, 286 (S.D.N.Y.1985). Here, the Agreement requires that an employee be given a written warning prior to being fired, be notified of the reason for being fired, and gives the employee a mechanism to test the sufficiency of the reason for firing through the grievance procedures. In addition, Hull received written notice of the reason for his termination in the telegram from Garavaglia, and utilized the grievance machinery to test the sufficiency of the reason. The Agreement clearly provided Hull with more than I.C. 22–6–3–1 could offer. Therefore, federal law preempts Count III.

■ Count IV alleges a violation of I.C. 22–5–3–1, the Indiana Blacklisting statute, which provides:

A person who, after having discharged any employee from his service, prevents the discharged employee from obtaining employment with any other person commits a Class C infraction, and is liable in penal damages to the discharged employee, to be recovered by civil action; but this section does not prohibit a person from informing, in writing, any other person to whom the discharged employee has applied for employment, a truthful statement of the reasons for the discharge.

of a sandwich. The court held that the statements were made in the context of the discipline of a bargaining unit employee, which was covered by the collective bargaining agreement, and thus were "central rather than tangential to rights and procedures provided under the collec-

tive bargaining agreement. They intertwine not only with management's right to discipline for cause, but also with labor and management's right to resolve disputes openly in accordance with their private agreement."

Courts have found that state law claims of blacklisting are preempted by federal labor law. *See Peterson v. Air Line Pilots Ass'n.*, 759 F.2d 1161, 1170 (4th Cir.1985); *Campbell v. McLean Trucking Co.*, 592 F.Supp. 1560 (E.D.N.Y.1984). Therefore, Count IV is preempted.

■ Count V alleges a violation of I.C. 22-2-9-2, which provides in pertinent part:

Whenever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred.

This claim challenges the timeliness of Central's payment of Hull's last paycheck. However, the Agreement specifies the pay period to be used when paying out wages to employees governed by the Agreement. Quite simply, *when* Hull was to be paid is a function of the Agreement. Whether Hull was paid properly under the Agreement involves consideration of the Agreement itself, and thus § 301 preempts a state law claim about when wages are due.

Thus, the court finds that all of Hull's state law claims are preempted by § 301 except his defamation claim relating to statements made by Garavaglia to Detective Trautz and the Michigan Employment Security Commission. Therefore, the only claims remaining in the case are the defamation claims and the § 301 claim of Count I. However, out of an abundance of caution, the court will consider the merits of all five counts.

## II. MERITS OF THE CLAIMS

### A. Count I

■ Given the preemption of a state breach of contract claim in Count I, this count can only be construed as a violation of § 301. However, as noted above, Hull has already brought a § 301 action against Central. This court held that Hull's § 301 action was time-barred by the six month statute of limitations applicable to § 301 suits. *Hull v. Local 414 of International Brotherhood of Teamsters*, 601 F.Supp. 869 (N.D.Ind.1984). Clearly, *res judicata* prevents the relitigation of this § 301 claim. Therefore, Count I fails as a matter of law.

### B. Count II

There are three claims of defamation in Count II: the comments made to the MCLAGC; the statements made to Detective Trautz; and the statements made to the Michigan Employment Security Commission. Garavaglia claims privileges for his statements in each instance. The court analyzes these claims in turn.

#### 1. The Statements to MCLAGC

■ The statements made by Garavaglia to MCLAGC were made in the context of grievance proceedings under the Agreement. Several courts have held that statements made in grievance proceedings are unqualifiedly, or absolutely, privileged. *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274, 278 (10th Cir.1981); *General Motors Corp. v. Mendicki*, 367 F.2d 66, 70 (10th Cir.1966); *Brooks v. Solomon Co.*, 542 F.Supp. 1229 (D.Ala.1982). The rationale behind this rule is that damage suits for statements made in the course of the proceedings would inhibit frank and strong statements of the parties' positions, *Hasten*, 640 F.2d at 279, with the result that "the likelihood of the attainment of peaceful adjustments or disposition of the issues involved between [employers and employees] through the conference or bargaining processes would be greatly decreased." *Mendicki*, 367 F.2d at 71. The court is persuaded by this precedent, and therefore finds that Garavaglia's statements at the MCLAGC were absolutely privileged.[3]

---

**3.** Hull claims that the privilege asserted here cannot apply because MCLAGC is not the proper body to hear his appeal of the first denial of his grievance. According to Hull, the appeal should have been heard by a Joint State Committee. However, the unrefuted affidavit of Ste-

phen Bridge, Secretary/Treasurer of MCLAGC, establishes that MCLAGC is a Joint Committee under the National Master Freight Agreement, from which the Agreement between Central and the Union is derived. In addition, MCLAGC's status as a Joint Committee was an undisputed

Therefore, the defamation claim based on those statements must fail.

### 2. Statements to Detective Trautz

■ Hull's complaint alleges that Garavaglia told Detective Trautz, who was investigating the March 11, 1983 incident, that Hull was not fired on account of the March 11 altercation but because he had beaten up an old man in Fort Wayne. Garavaglia claims that his statements are qualifiedly privileged as statements made to a law enforcement officer. However, assuming Garavaglia had a privilege, it was only a "qualified" privilege, which means that it would not attach to a statement if "the defendant acted principally through motives of ill will or ... if he acted recklessly." *Elliott v. Roach,* 409 N.E.2d 661, 673 (Ind.App.1980). Hull has alleged that Garavaglia acted maliciously and deliberately in making his statements to the police detective, which is sufficient to raise an issue of fact about the applicability of the privilege. Therefore, summary judgment cannot be granted on this claim.

### 3. Statements to the Michigan Employment Security Commission

■ Hull's final defamation claim involves statements by Garavaglia to the Michigan Employment Security Commission. It is clear under Michigan law (which would govern this claim) that statements made to the Commission are privileged. The privilege is statutorily recognized:

> Any report or statement, written or verbal, made by any person to the commission, or any member thereof, or to any person engaged in administering this law, shall be a privileged communication and no person, firm or corporation shall be held liable for slander or libel on account of such report or statement.

M.C.L.A. § 421.11(b). The language of the statute itself implies that the privilege is absolute ("no person ... shall be held liable"), and the Michigan Supreme Court has so found. *Sias v. General Motors Corp.,* 372 Mich. 542, 127 N.W.2d 357 (1964). Therefore, Garavaglia's statements to the Commission are absolutely privileged, and Hull's claim must fail as a matter of law.

### C. Count III

■ Count III claims a violation of I.C. 22–6–3–1, which requires an employer to issue a letter setting forth the reasons for discharge. I.C. 22–6–3–2, which provides that a person violating I.C. 22–6–3–1 is guilty of a Class C infraction (a misdemeanor), indicates that I.C. 22–6–3–1 is intended to be a penal statute. Being in derogation of the common law, it must be strictly construed. *Palmer v. Stockberger,* 135 Ind.App. 263, 193 N.E.2d 384, 387 (1963). Nothing in the statute provides for a private civil action to enforce the statute; indeed, given the fact that the legislature has opted to make violation of the statute a criminal offense, one can imply that it did not intend to create any private cause of action.[4] Therefore, Hull cannot as a mat-

---

fact in Hull's previous case before this court. Thus, Hull's argument is without merit.

**4.** Under the Supreme Court's analysis in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the proper methodology for determining whether a private cause of action may be implied from a statute involves the examination of four factors: (1) whether the statute creates a right in favor of the plaintiff; (2) whether there is any express or implied indication of legislative intent to create or deny a remedy; (3) whether the underlying purpose of the legislative scheme is consistent with implying a private remedy; and (4) whether the cause of action is traditionally relegated to state law, an issue not relevant here. *Id.* at 78, 95 S.Ct. at 2088. It is clear that the second and third

factors militate against finding a private cause of action. By making a violation of I.C. 22–6–3–1 a criminal offense, the legislature has indicated its desire to have the statute enforced through the prosecutorial power of the state and not through private individuals. To allow private actions to enforce criminal statutes would create chaos in the state courts, and is inconsistent with the power to enforce criminal statutes that the legislature has bestowed on prosecutors.

This legislative intent not to create a private cause of action becomes even clearer when one examines the statute at issue in Hull's Count IV. I.C. 22–6–3–1 states that an employer who blacklists an employee as defined in the statute "commits a Class C infraction, *and is liable in penal*

ter of law pursue a claim under I.C. 22–6–3–1.

### D. Count IV

■ Count IV challenges a violation of the Indiana Blacklisting statute, I.C. 22–5–3–1. An examination of the statute reveals that an essential element of a claim under the statute is that the former employer must have prevented the discharged employee from obtaining employment. Here, Hull has made no allegations that he was actually unable to obtain a job because of anything said by Garavaglia or anyone else at Central. In fact, the complaint seems to focus on Garavaglia's statements of the MCLAGC and the violation of I.C. 22–6–3–1, which does not, either directly or inferentially, suggest an actual denial of employment. Further, these two acts do not establish in any way the causal element implicit in the statute's language.

The complaint does allege that these acts were engaged in by Garavaglia "knowingly, wrongfully and fraudulently, and with the intent that the [MCLAGC] rely upon the statements made and uphold the discharge, denying him reemployment, and with the intent to prevent him from obtaining employment with any other person or entity . . . ." At first reading, this language appears to be either an item in a list of things allegedly intended by Garavaglia or else an assertion that MCLAGC's denial of the appeal would result in a denial of reemployment. Neither of these would constitute an assertion of an actual prevention of employment; that would seem to require that Hull allege that he tried to get work and was unable to do so because of the "blacklisting" by Garavaglia and Central. Further, the motion for summary judgment challenged the sufficiency of the pleadings in this court, and Hull has not responded. As noted in the standards for summary judgment, a party cannot rest on mere allegations in his pleadings.

The court therefore finds that Hull has failed to make out a claim under I.C. 22–5–3–1, and that the claim as pleaded is insufficient as a matter of law.

### E. Count V

■ The final claim alleges that Central violated I.C. 22–2–9–2, which requires payment of wages due a discharged employee on the pay day for the pay period in which the discharge occurred. Central has alleged full payment on April 14, 1983, and Hull does not dispute that fact. I.C. 22–2–9–2 is clearly concerned with timely and expeditious payment of wages due a discharged employee. In light of the fact of payment within a month of discharge, Hull can only make out a claim under this statute by showing that the pay period ended at some point sooner than April 14, 1983. Hull has made no such showing, nor has he offered any assertions or evidence of any damage done to him by the payment made on April 14, 1983. Thus, this claim as pleaded is insufficient as a matter of law.

Thus, the court's examination of the merits of Hull's claims reveals that only the defamation claim for statements made to Detroit Detective Trautz has any merit. Because the preemption analysis did not find that claim preempted, the court concludes that the motion for summary judgment must be denied as to that claim. However, the motion will be granted as to all other claims.

### Conclusion

For the reasons stated above, the defendants' motion is hereby DENIED as to the Count II claim for defamation in statements made to Detroit Police Detective Raymond Trautz. The motion for summary judgment is hereby GRANTED in all other respects.

---

*damages to the discharged employee, to be recovered by civil action"* (emphasis supplied). The legislature obviously knows how to indicate that a Class C misdemeanor may be pursued by a private action, and the absence of similar language in I.C. 22–6–3–1 negates the implication of a private cause of action under that statute.