STILES, Appellant,

v.

CHRYSLER MOTORS CORP. et al.; Mutchler et al., Appellees.

[Cite as *Stiles v. Chrysler Motors Corp.* (1993), 89 Ohio App.3d 256.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–196.

Decided June 30, 1993.

*C. Thomas McCarter,* for appellant.

*Joan Torzewski,* for appellees.

---

HANDWORK, Judge.

This case is on appeal from the May 7, 1992 judgment of the Lucas County Court of Common Pleas, which granted summary judgment to appellees, Todd

Mutchler, Gary Malosh and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 12 ("Union"), on all of the claims against them. On appeal, appellant, Edward D. Stiles, asserts the following assignments of error:

"The trial court prejudicially erred in finding the facts regarding the 'Majors' incident to be irrelevant, thereby not considering said facts.

"The trial court erred in finding defendants were entitled to absolute privilege recognized under federal law with respect to plaintiff's defamation claims.

"The trial court erred in finding defendants Malosh and UAW were entitled to a qualified privilege with respect to plaintiff's defamation claims.

"The trial court erred in granting summary judgment as a matter of law on plaintiff's claims of tortious interference with his employment contract.

"The trial court erred in granting judgment to defendants on plaintiff's claims for intentional infliction of emotional distress.

"The trial court erred in granting judgment to defendants on plaintiff's civil conspiracy claim."

On October 20, 1989, Stiles filed a complaint for declaratory, injunctive and monetary relief against Chrysler Motors Corporation, Jerry Huber, individually and as plant manager, Todd Mutchler, individually, and Gary Malosh, individually and as a Union steward. Stiles alleged that he had been employed as a supervisor for Chrysler Corporation, Jeep Division, from 1973 to 1988 and during such time received satisfactory or better annual appraisals. He alleged that he had received only one disciplinary action (a written reprimand), from Jerry Huber, the plant manager, for "lack of good judgment," arising out of an incident involving the denial of a pass to an hourly employee (Anthony Majors) on February 25, 1988. He asserted that this reprimand was part of a conspiracy between Huber, Malosh, an employee of Chrysler Corporation and a Union steward, and other management and Union members to deprive Stiles of his employment opportunities because of his age and because he was disliked by the Union and its members for being a "no-nonsense supervisor."

Stiles also alleged that Todd Mutchler (an employee of Chrysler Corporation under Stiles's supervision and a member of the Union) and Malosh had accused Stiles within and outside the plant "of issuing a written warning to Mutchler in an improper and discriminatory manner by 'grabbing Mutchler's belt buckle and jeans, pull[ing] them towards him [Stiles] and shov[ing] the discipline in the from [front] of his pants'" when those accusations were known to be false. Stiles further alleged that when Chrysler Corporation (via Huber and other supervisory and personnel employees) had investigated this incident pursuant to the request of Mutchler and Malosh, they repeatedly and knowingly uttered false and

defamatory statements regarding Stiles with the malicious intent to interfere with his employment contract, to defame his character and to injure his reputation.

Stiles also alleged that Chrysler Corporation, Huber and the other supervisory and personnel department employees who investigated this incident had become aware of the truth but had terminated his employment anyway "as part of the furtherance of the conspiracy to deprive [Stiles] of employment opportunities and to injure his reputation within the community and to cause him serious emotional pain and suffering and mental anguish." Stiles further alleged that the aforementioned defendants had also coerced Stiles into executing documents regarding participation in SERP, an early retirement program, in lieu of termination of his employment.

The claims against Chrysler Motors Corporation and Huber were removed to the United States District Court for the Northern District of Ohio, Western Division.

Stiles asserted in his complaint the following claims pertinent to this appeal:

"Count III: That Mutchler's statements regarding Stiles were libelous and slanderous *per se;*

"Count IV: That Malosh's statements regarding Stiles were libelous and slanderous *per se;*

" * * * *

"Count VI: That Mutchler had tortiously interfered with Stiles's employment contract with Chrysler Corporation;

"Count VII: That Malosh had tortiously interfered with Stiles's employment contract with Chrysler Corporation;

" * * * *

"IX: That Mutchler had intentionally and maliciously inflicted emotional distress on Stiles;

"X: That Malosh had intentionally and maliciously inflicted emotional distress on Stiles;

" * * * *

"XII: That Mutcher, Malosh, Huber and other unknown employees of Chrysler Motor[s] Corporation had 'aspired' [conspired] to injure Stiles;

" * * * *

"XV: That the actions of Chrysler Motor[s] Corporation, Huber, Mutchler and Malosh were done maliciously, recklessly, and with the willful and wanton intent to injure Stiles[.]"

The trial court permitted Stiles to amend his complaint to add other Chrysler Motors Corporation employees as defendants. These additional defendants were Booker McQueen, Dawn Stine and Jean Hathaway. Stiles also added the Union to Count VII (tortious interference with the employment contract), Count X (intentional infliction of emotional distress), Count XII (conspiracy) and Count XV (punitive damages).

Stiles sought summary judgment on all of the counts in his complaint. Mutchler, Malosh and the Union also moved for summary judgment on Counts III, IV, VI, VII, IX, X, XII, and XV.

The trial court granted summary judgment to appellees on each of the above-mentioned counts and dismissed Stiles's complaint.

Summary judgment is appropriate when:

" * * * the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * " Civ.R. 56(C).

The deposition testimony reveals the following pertinent facts. On October 21, 1988, Stiles attempted to give Mutchler a written warning for refusing work. Stiles called Mutchler into a stairwell near Mutchler's workstation in order to give the warning in private. An argument ensued regarding the warning and Mutchler refused to take the written warning. Stiles testified that he started to hand the paper to Mutchler and he hit it, knocking it to the floor. Stiles told Mutchler the warning was considered delivered. Mutchler testified that he later complained to the labor relations department, other management personnel, and Union officials that Stiles had stuffed part of the letter down the front of Mutchler's pants. Mutchler's informal grievance was investigated by the labor relations department. Various meetings were held concerning the matter. Those involved in the meetings included Stiles, Mutchler, the labor relations department, management representatives and various Union representatives.

While there was testimony that rumors regarding the incident had spread around the plant, there is no evidence that any of appellees discussed the incident with others outside the grievance process.

■ Appellant argues in his first assignment of error that the trial court erred by refusing to consider all relevant evidence. Specifically, Stiles argues that the court should have considered the events preceding the Mutchler incident.

Based on our resolution of the remaining assignments of error, we find that the circumstances surrounding the Mutchler incident are the only relevant facts needed to decide this case. Therefore, we find appellant's first assignment of error not well taken.

■ Stiles argues in his second assignment of error that the trial court erroneously found that appellees were entitled to an absolute privilege as to Stiles's defamation claim. Stiles argues that the case of *Gen. Motors Corp. v. Mendicki* (C.A.10, 1966), 367 F.2d 66, and other federal cases which adopt the same analysis as *Mendicki* should not have been relied upon by the trial court to decide this case. He asserts that this case is distinguishable because Stiles is part of management, he is not an employee subject to a collective bargaining agreement, and the defamatory statements were not made during the grievance process mandated by the collective bargaining agreement. Stiles relies on *Bailey v. Sams* (1985), 24 Ohio App.3d 137, 24 OBR 208, 493 N.E.2d 966. Even if Mutchler's alleged grievance is considered as a basis for the absolute privilege, Stiles argues that there is a material question of fact as to whether Mutchler ever filed a grievance in this case.

■ The determination of whether a party had an absolute privilege to make an alleged defamatory statement is a question of law for the court. *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 232, 25 OBR 288, 290–291, 495 N.E.2d 939, 941–942.

We have examined the federal cases relied upon by the trial court. We agree with the trial court that the National Labor Relations Act supersedes state defamation law and that an absolute privilege existed in this case barring the cause of action for defamation under state law.

■ Federal courts recognize that the National Labor Relation Act reflects the federal policy to encourage peaceful resolution of labor disputes by the collective bargaining processes. *Mendicki, supra,* 367 F.2d at 70; *Hasten v. Phillips Petroleum Co.* (C.A.10, 1981), 640 F.2d 274, 279; *Hull v. Cent. Transport, Inc.* (N.D.Ind.1986), 628 F.Supp. 784, 791; and *Brooks v. Solomon Co.* (N.D.Ala.1982), 542 F.Supp. 1229, 1230–1231. Because of the overriding federal interests in labor relations, federal law preempts state defamation law to the extent that an

absolute privilege exists to make an alleged defamatory statement if the statement is made by representatives of management or the Union during a "conference and bargaining session having for its purpose the adjustment of a grievance of the employee or other disposition of such grievance." *Mendicki, supra,* 367 F.2d at 70. Accord *Hasten, supra; Hull, supra; Brooks, supra; Fulghum v. United Parcel Serv.* (1985), 424 Mich. 89, 378 N.W.2d 472; and *Surrency v. Harbison* (Ala.1986), 489 So.2d 1097. Cf. *Thompson v. Pub. Serv. Co.* (Colo. 1990), 800 P.2d 1299, certiorari denied (1991), 502 U.S. ——, 112 S.Ct. 452, 116 L.Ed.2d 469. See, also, Annotation, Libel and Slander: Privileged Nature of Communications Made in the Course of Grievance or Arbitration Procedure Provided For By Collective Bargaining Agreement (1974), 60 A.L.R.3d 1041. Grievance proceedings have also been classified as quasi-judicial, thereby giving rise to an absolute privilege for statements made by a party concerning another if the matter has some relationship to the proceeding. Restatement of the Law 2d, Torts (1977) 248, Section 587.

The defense of absolute privilege applies to defamatory statements made in termination notices as well as bargaining sessions if the notices are required or authorized by the collective bargaining agreement. *Hasten, supra,* and *Shane v. Greyhound Lines, Inc.* (C.A.9, 1989), 868 F.2d 1057, 1063. Cf. *Tellez v. Pacific Gas & Elec. Co.* (C.A.9, 1986), 817 F.2d 536, 537. The determining factor is whether the alleged defamatory statement was made during or in connection with dispute resolution processes governed by a collective bargaining agreement.

The *Bailey* case cited by Stiles is consistent with the above federal cases. In *Bailey,* the court held that an alleged defamatory statement sent to the Ohio State Joint Grievance Committee was outside the collective bargaining grievance process. Therefore, defendants could not claim an absolute privilege to publish such statements. *Id.,* 24 Ohio App.3d at 139, 24 OBR at 210, 493 N.E.2d at 968–969. Here, however, there is no evidence that the alleged defamatory statements were not kept within the grievance process.

We also see no basis for distinguishing the case before us on the ground that a representative of the employer was defamed by the employee or the employee's representatives. The effect of allowing a defamation suit is the same: a party would be reluctant to fully utilize the grievance process to resolve disputes for fear of reprisal. Cf. *In re Hunyadi* (1982), 112 Misc.2d 484, 486, 447 N.Y.S.2d 226, 227 (alleged defamatory statements of prisoner regarding corrections officer absolutely privileged because they were made during a quasi-judicial proceeding and because of the chilling effect on the prisoner's First Amendment rights).

In the case before us, the collective bargaining agreement provides in pertinent part as follows:

"Paragraph 2—Definition of a Grievance

"As used in this Agreement, the term 'grievance' shall mean any misunderstanding, difference, or dispute between the Company and the Union, or one or more of the employees represented by the Union arising out of this Agreement, or any supplemental agreements thereto, concerning or relating to the interpretation and application thereof and filed subsequent to the effective date of this Agreement.

" * * *

"Paragraph 4—Steps of Procedure

"(a) First Level: An employee having a grievance or one designated employee of a group of employees having a grievance will take up and discuss and attempt to settle the grievance with the steward and the Supervisor. The Supervisor will give full and fair consideration to the grievance as promptly as circumstances allow and he shall render a fair and just decision by the end of the working day following the day on which the grievance was brought to his attention."

■ The defense of absolute privilege was recognized to ensure that labor disputes are resolved according to the grievance process. However, the federal cases usually involve defamatory statements made in the heat of the moment or made recklessly. Here, however, we are presented with a situation involving a potentially pseudo-grievance. To permit a defamation action against appellees would not seem to deter a future use of the grievance process. However, a grievant might be deterred from filing the grievance because of a fear of inaccurately stating the underlying facts or having the arbitrator disbelieve the grievance. For this reason, we find that an absolute privilege must be accorded the grievant, the Union or employer in order to preserve the grievance process. The hope is that the grievance process will bring out the truth and keep the allegedly defamatory statements confidential.

■ Therefore, based upon the procedures set forth in the collective bargaining agreement, we find that Mutchler properly complained to the Union about the alleged incident with Stiles. Any defamatory statements made during meetings or the investigation of this grievance were absolutely privileged. Whether or not a written grievance was ever filed is irrelevant. The collective bargaining agreement does not require a written grievance to initiate grievance proceedings.

■ Finally, Stiles argues that appellees also published their defamatory statements for other purposes, namely, to have Stiles disciplined. The appellee's motive in making the statement is irrelevant if an absolute immunity exists. Prosser & Keaton, Law of Torts (5 Ed.1984) 816, Section 114. Thus, Stiles's

argument is without merit. Therefore, we find Stiles's second assignment of error not well taken.

In his third assignment of error, Stiles argues that the trial court erred by finding that Malosh and the Union were entitled to a qualified privilege regarding their alleged defamatory statements.

Having found that the appellees were entitled to an absolute privilege in this case, we need not reach the issue of whether these parties would also be entitled to a qualified privilege. Accordingly, Stiles's third assignment of error is found to be moot.

In Stiles's fourth assignment of error, he argues that the trial court erred when it granted summary judgment to appellees on his claims of tortious interference with his employment contract.

The tort of interference with the performance of a contract is defined as follows:

" ' * * * [O]ne who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby. Restatement of Torts 63, Section 766 (1939).' *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238. See, also, 2 Harper, James & Gray, The Law of Torts (2 Ed.1986), 311, Section 6.7; *Smith v. Klein* (1985), 23 Ohio App.3d 146, 23 OBR 387, 492 N.E.2d 852." *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 100, 551 N.E.2d 172, 178 (Holmes, J., dissenting.)

The courts have recognized the concept of privilege in tortious interference cases where the defendant had a duty or right to intrude upon the employment relationship. *Wolfe v. McCullough–Hyde Mem. Hosp.* (1990), 67 Ohio App.3d 349, 355, 586 N.E.2d 1204, 1208–1209; *Contadino v. Tilow* (1990), 68 Ohio App.3d 463, 467, 589 N.E.2d 48, 50–51; *Smith v. Klein* (1985), 23 Ohio App.3d 146, 23 OBR 387, 492 N.E.2d 852; *Bell v. Le–Ge, Inc.* (1985), 20 Ohio App.3d 127, 20 OBR 160, 485 N.E.2d 282; *Donald G. Culp Co. v. Reliable Stores Corp.* (1983), 14 Ohio App.3d 161, 14 OBR 178, 470 N.E.2d 193; and *Juhasz, supra.* Although all of the aforementioned cases involved the existence of a qualified privilege, we see no reason why the defense of absolute privilege should not apply in cases of tortious interference as well as defamation. Therefore, for the same reasons as set forth above regarding the second assignment of error, we find that any of the actions of appellees that may have led to the termination of Stiles's employment are absolutely privileged. Therefore, Stiles's fourth assignment of error is found not well taken.

In his fifth assignment of error, Stiles argues that the trial court erred by granting summary judgment to appellees on Stiles's claim of intentional infliction of emotional distress. The tort of infliction of emotional distress is defined as an intentional or reckless act which is extreme and outrageous and which causes serious emotional distress and, if applicable, bodily harm to another. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus. We hold that this state law tort action is also subject to the defense of absolute privilege discussed above. See Restatement of the Law 2d, Torts (1965) 76, Section 46, Comment *g* (which discusses the application of a qualified privilege to intentional infliction of emotional distress cases). Cf. *Hoisington v. Jones* (Feb. 6, 1990), Franklin App. Nos. 89AP–720 and 89AP–743, unreported, 1990 WL 9270 (an absolute privilege for matters published in a judicial pleading bars recovery on defamation and intentional infliction of emotional distress claims). Appellant's fifth assignment of error is found not well taken.

In his sixth assignment of error, Stiles argues that the trial court erred in granting summary judgment to appellees on Stiles's civil conspiracy claim.

The civil action of conspiracy is defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *LeFort v. Century 21– Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 644–645. An underlying tort is necessary to give rise to a cause of action for conspiracy. Therefore, there must be actual damages attributable to the conspiracy in addition to those damages caused by the underlying tort in order for the plaintiff to recover from the conspiracy. *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 195– 196, 26 O.O.2d 359, 359–360, 193 N.E.2d 280, 280–282.

In the case before us, all of the causes of action alleged in Stiles's complaint against appellees were dismissed on summary judgment. Since there was no underlying tort or actual damages alleged with respect to the cause of action for conspiracy, the trial court properly granted summary judgment in favor of appellees on the conspiracy claim. Therefore, Stiles's sixth assignment of error is found not well taken.

Accordingly, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.

*Judgment affirmed.*

GLASSER, P.J., and ABOOD, J., concur.