OPINION
{¶ 1} Appellant Randall C. Gintert ("Gintert") appeals the decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of defendants, WCI Steel, Inc. ("WCI"), Stephen Kolenich ("Kolenich"), Willie Summerlin ("Summerlin"), James W. Clifford ("Clifford"), and John Caicco ("Caicco"). For the following reasons, we affirm in part and reverse in part the decision of the court below. *Page 2 
 {¶ 2} Gintert began work at the Warren, Ohio Republic Steel/WCI plant in January 1979, first in the Transportation Department and later in the Basic Oxygen Furnace.[1] In May 1990, Gintert was promoted to the position of melting supervisor. In 1995, Gintert became general turn supervisor. As general turn supervisor, Gintert was in charge of shop operations in the Basic Oxygen Furnace and was the direct supervisor of fifteen to twenty other employees. Gintert held this position until his termination from WCI on April 24, 2000.
 {¶ 3} In September 1990, Gintert entered himself in the New Start rehabilitation program at St. Joseph's Hospital in Warren for drug abuse. Gintert entered the New Start program again in March 1991 after testing positive for drugs at WCI. After completing rehabilitation on each occasion, Gintert was told by WCI that he would be subject to random drug testing and that he would have to report to an employee assistance program counselor once a week. Thereafter, Gintert did not test positive for drug use. In April 1998, Gintert entered himself into the Glenbeigh rehabilitation program in Rock Creek, Ohio, for drug and alcohol abuse. After completing the Glenbeigh program, Gintert was required to sign an agreement that he would be subject to random drug testing and would report to his employee assistance program counselor once a week. This agreement also provided that any further need of in-patient rehabilitation could result in the termination of his employment. Thereafter, Gintert was not involved in any further incidents involving drugs or alcohol.
 {¶ 4} On January 12, 1999, Gintert was involved in a verbal argument with fellow employee Clifford regarding rumors that Clifford had spread about Gintert. In the course of the argument, Clifford called Gintert a "druggy." Gintert's supervisors *Page 3 
investigated the incident and told Gintert and Clifford that if the incidents continued that both could face termination.
 {¶ 5} In December 1999, two of Gintert's fellow employees, Kolenich and Pete Goranitis, made separate allegations that Gintert had sexually harassed them. Both allegations were investigated by WCI. Each time an allegation was made Gintert was asked to take a drug test. Gintert passed on both occasions. The results of the investigation were inconclusive as to whether the alleged harassment ever occurred. A letter, dated March 17, 2000, and signed by Gintert, was placed in Gintert's employee file. This letter stated, in part, "in conjunction with your 5-8-98 Salaried Employment Agreement and documentation of a 1-12-99 incident, any violations of Company Policy, Rules and Regulations and any other harassment complaint violation shall be grounds for disciplinary action, up to and including termination."
 {¶ 6} On April 10, 2000, Gintert was accused of making a racial slur in front of an African-American employee of WCI. The alleged incident had occurred two months earlier at the end of February or the beginning of March. The employee to whom the alleged slur was made, William Smith ("Smith"), did not report the incident to WCI. Smith did recount the slur to another WCI worker and report of the incident eventually came to Summerlin, who worked under Gintert's supervision. After a confrontation in which Summerlin refused to take instructions from Gintert, Smith reported the incident to his union representative, Caicco. Caicco, in turn, reported it to Gintert's supervisor, William Weber ("Weber"). By April 12, 2000, Weber had interviewed several employees regarding the incident and had found two who claimed to have heard Gintert make the *Page 4 
racial slur. Weber had also spoken with Gintert, who denied making the remark. Weber turned the matter over to the personnel department.
 {¶ 7} Gintert had requested to take the week of April 17, 2000, off for vacation. Gintert had also requested to take off April 14, 2000, the Friday before his scheduled vacation. Gintert's request to take that Friday off was denied. After reporting for his scheduled shift on April 14, 2000, Gintert requested to have the temporary turn supervisor finish his shift. This request was also denied. Contrary to his supervisor's express instruction to complete his shift, Gintert called in the temporary turn supervisor and left his shift early.
 {¶ 8} The Monday following Gintert's vacation, April 24, 2000, Weber and Dennis S. Pogany ("Pogany"), general manager of personnel at WCI, met with Gintert to discuss the racial slur incident and Gintert's failure to complete his shift on April 14, 2000. Gintert did not deny that he had failed to complete his shift that Friday. Caicco and the two employees who claimed to have heard Gintert make the racial remark were summoned. In Gintert's presence, they affirmed that Gintert had made the remarks. Gintert denied this again and claimed that one of the employees accusing him had made the offensive remark. Caicco and the two employees were dismissed. Weber and Pogany then discussed the matter and decided to terminate Gintert's employment.
 {¶ 9} In a memorandum of the April 24, 2000 meeting, the reasons for terminating Gintert's employment are stated as follows: "Substantiation of the facts surrounding the two (2) most recent incidents involving Mr. Gintert supported the execution of the 3-17-00 performance understanding. Mr. Gintert's actions toward a black Union employee and his insubordination were grounds for disciplinary action, up *Page 5 
to and including termination. Considering Mr. Gintert's overall work record, performance history and the negative impact on his individual and departmental management efforts and credibility, termination of employment was the most appropriate action."
 {¶ 10} On June 6, 2000, Gintert filed a complaint against WCI and WCI employees, Kolenich, Summerlin, Clifford, and Caicco. An amended complaint was filed on December 13, 2000. Gintert asserted claims against WCI for handicap discrimination in violation of R.C. 4112.02, breach of employment contract, and intentional infliction of emotional distress. Against the individually named defendants, Gintert asserted claims for intentional infliction of emotional distress, intentional interference with a contractual relationship, slander, and libel. On August 19, 2002, the trial court granted summary judgment in favor of the defendant-appellees on all counts of the amended complaint.
 {¶ 11} Gintert timely appealed the trial court's judgment. During the pendency of the appeal, WCI filed for bankruptcy resulting in a stay of the proceedings on October 21, 2003, pending further order of the United States Bankruptcy Court. On August 28, 2007, WCI's case in bankruptcy court closed. As a result of the bankruptcy, WCI is no longer a party to the appeal. On September 4, 2007, the stay was dissolved and the appeal proceeded against appellees Kolenich, Summerlin, and Ciacco.
 {¶ 12} On appeal, Gintert raises one assignment of error relative to appellees Kolenich, Summerlin, and Ciacco.
 {¶ 13} "[1.] The trial court erred in granting summary judgment in favor of Defendants-Appellees Stephen Kolenich, Willie Summerlin, and John Caicco." *Page 6 
 {¶ 14} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewed in a light most favorable to the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Zivich v. Mentor Soccer Club,Inc., 82 Ohio St.3d 367, 369, 1998-Ohio-389. A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Scioto Bd. ofCommissioners (1993), 87 Ohio App.3d 704, 711 (citation omitted).
 {¶ 15} Gintert argues that the trial court erred in finding that Kolenich, Summerlin, and Caicco enjoyed either an absolute or a qualified privilege with respect to Gintert's claims for defamation, interference with contractual relations, and intentional infliction of emotional distress.
 {¶ 16} Ohio law recognizes an absolute and a qualified privilege for certain statements that constitute a defense to a defamation claim.Costanzo v. Gaul (1980), 62 Ohio St.2d 106, 108.
 {¶ 17} The rule regarding absolute privilege is that "a statement made in a judicial proceeding enjoys an absolute privilege against a defamation action." Hecht v. Levin, 66 Ohio St.3d 458, 460,1993-Ohio-110; Surace v. Wuliger (1986), 25 Ohio St.3d 229, at syllabus. The privilege applies absolutely regardless of whether the speech is *Page 7 
false or malicious. Surace, 25 Ohio St.3d at 232; Erie County Farmers'Ins. Co. v. Crecelius (1930), 122 Ohio St. 210, 212-213.
 {¶ 18} The absolute privilege has also been recognized as applying to proceedings of a quasi-judicial nature. See, e.g., Hecht,66 Ohio St.3d 458, at paragraph one of the syllabus (for purposes of absolute privilege, "[a] complaint filed with the grievance committee of a local bar association is part of a judicial proceeding"); Barilla v.Patella, 144 Ohio App.3d 524, 534 ("[c]ommunications made during unemployment proceedings, which are quasi-judicial in nature, are subject to an absolute privilege"); Baldwin v. Adidas America, Inc.
(S.D.Ohio 2002), Case No. C-2-02-265, 2002 U.S. Dist. LEXIS 19626, at *8 (finding the United States Patent and Trademark Office, Trademark Trial and Appeals Board a quasi-judicial tribunal and statements made in a petition thereto are "clothed with an absolute privilege").
 {¶ 19} In Stiles v. Chrysler Motors Corp. (6th Dist. 1993),89 Ohio App.3d 256, the Sixth District Court of Appeals held that statements made in the course of a grievance proceeding arising out of a collective bargaining agreement are entitled to receive the absolute privilege accorded them under federal law. Id. at 262-263, citing Gen. MotorsCorp. v. Mendicki (C.A.10 1966), 367 F.2d 66, 70; Baldwin, 2002 U.S. Dist. LEXIS 19626, at *6. The Stiles court reasoned that such communications should be afforded an absolute privilege under Ohio law because grievance proceedings are quasi-judicial in nature. "Grievance proceedings have also been classified as quasi-judicial, thereby giving rise to an absolute privilege for statements made by a party concerning another if the matter has some relationship to the proceeding. Restatement of the Law 2d, Torts (1977), 248, Section 587."Stiles, 89 Ohio App.3d at 263. *Page 8 
 {¶ 20} Relying on Stiles, the trial court held that the statements made by Summerlin, Caicco, and Kolenich were absolutely privileged because they were reasonably related to the union's grievance procedure. We disagree with the Sixth District's decision in Stiles that statements "made during or in connection with dispute resolution processes governed by a collective bargaining agreement" are absolutely privileged. Id. The immunity given statements made in a judicial proceeding has been recognized "in only very limited areas of activity in our society," including "legislative and judicial proceedings, and other acts of state." Costanzo, 62 Ohio St.2d at 109. The types of activity to which the privilege has been extended, such as bar grievance proceedings and unemployment proceedings, are at least acts of state. Although governed by federal law, the collective bargaining agreement between the steelworkers' union and WCI is an agreement between private parties. Moreover, the grievance procedure provided for in the collective bargaining agreement is one over which there is a minimum of judicial oversight. Therefore, we do not feel that the grievance proceedings at issue herein merit the extreme protection of absolute immunity granted to other quasi-judicial acts of state.[2]
 {¶ 21} The trial court held in the alternative that the statements made by Summerlin, Caicco, and Kolenich are protected under a qualified privilege. Under the doctrine of qualified privilege, statements made in good faith on a matter of common interest between an employer and an employee, or between two employees, concerning a third employee are protected in an action for defamation. Evely v. Carlon Co. (1983), *Page 9 4 Ohio St.3d 163, 165; Hanley v. Riverside Methodist Hosp. (10th Dist. 1991), 78 Ohio App.3d 73, 81. If the requirements for the qualified privilege are established, then the burden falls on the plaintiff to show by clear and convincing evidence that the statements were made with actual malice, i.e., that the statements were made with knowledge or reckless disregard for their truth or falsity. Evely,4 Ohio St.3d at 166; Jacobs v. Frank (1991), 60 Ohio St.3d 111, paragraph two of the syllabus ("[i]n a qualified privilege case, `actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity"). We agree with the trial court that any statements that are reasonably connected with the union grievance procedure at WCI are entitled to a qualified privilege.
 {¶ 22} When a privilege, qualified or absolute, attaches to statements made in a defamation action, those statements remain privileged for the purpose of derivative claims such as intentional infliction of emotional distress and tortious interference with a business relationship.AB-Abell Elevator Co, Inc. v. Columbus/Central Ohio Building Construction Trades Council, 73 Ohio St.3d 1, 15, 1995-Ohio-66 ("where claims such as tortious interference and disparagement are based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements * * * must also apply in the derivative claims"); Doyle v. Fairfield Machine Co., Inc. (11th Dist. 1997), 120 Ohio App.3d 192, 218 ("[t]he applicability of qualified privilege in tortious interference cases has been recognized by Ohio courts"); Smith v. Ameriflora 1992, Inc. (10th Dist. 1994),96 Ohio App.3d 179, 187 (applying qualified privilege to claims for tortious interference). *Page 10 
 {¶ 23} Gintert alleges that Summerlin defamed Gintert by falsely accusing him of making the racial slurs that, in part, led to Gintert's termination. Summerlin's undisputed testimony demonstrates that Summerlin only made his accusations to two persons apart from Smith, who was the ultimate source of the accusation. Both persons were union representatives and Summerlin's purpose in reporting the accusation to them was to seek redress for Gintert's alleged remarks. One of these two union representatives was Caicco, a union grievance committeeman at WCI. Caicco, in accordance with the collective bargaining agreement between WCI and the union, reported the accusations to Gintert's departmental supervisor, Weber. WCI then undertook the investigation of the allegations and, as described above, decided to terminate Gintert. Accordingly, there was no need for Summerlin or the union to pursue further grievance against Gintert.
 {¶ 24} Under the law as stated above, we find that the allegedly defamatory statements made by Summerlin enjoy a qualified privilege, as they were made on a matter of common interest as part of the grievance procedure established between WCI and the steelworkers' union. Nor has Gintert demonstrated that Summerlin made the statements with actual malice. Upon hearing the rumor that Gintert had made the racial remarks, Summerlin verified that Gintert made the remarks by inquiring of Smith, one of the witnesses to the remarks being made. Likewise, the trial court properly granted Summerlin summary judgment on Gintert's claims for intentional infliction of emotional distress and tortious interference. These claims are based on the same privileged statements that form the basis of Gintert's defamation claim. AB-AbellElevator, 73 Ohio St.3d at 15. *Page 11 
 {¶ 25} We further find that Gintert's claims against Caicco, the steelworkers' union representative at WCI, are barred by the qualified privilege attaching to Caicco's statements. Gintert bases his claims against Caicco on the following: Caicco's communication of Summerlin's racial slur allegation to superintendent Weber; Caicco's communication of Kolenich's allegation of sexual harassment to Weber and to WCI employees in the personnel department; and Caicco's preparation and circulation of a group grievance petition among employees in the Basic Oxygen Furnace. This petition sought Gintert's transfer out of the Basic Oxygen Furnace for the reason that his management decisions threatened the safety and health of department employees.[3]
 {¶ 26} Caicco reported the sexual harassment and racial slur allegations to WCI management in his capacity as a grievance committeeman. Both Kolenich and Smith confirmed the allegations against Gintert so that it cannot be shown that Caicco acted with malice in reporting the allegations. Therefore, these communications enjoy a qualified privileged and are not actionable. Caicco circulated the group grievance at the request of Kolenich and with the approval of the union. We find Caicco's action in circulating this petition to be protected under the principle of federal law, adopted in Ohio, that "union officers and employees are immune from personal liability for acts undertaken as union representatives, on behalf of the union."Collins v. Lefkowitz (8th Dist. 1990), 66 Ohio App.3d 378, 380, citingAtkinson v. Sinclair Refining Co. (1962), 370 U.S. 238, 249; Sellers v.Doe (10th Dist. 1994), 99 Ohio App.3d 249, 252.
 {¶ 27} Gintert's claims against Kolenich arise out of Kolenich's accusations of sexual harassment against Gintert. Kolenich reported these accusations to Caicco, *Page 12 
Weber, Pogany, and the local union steward. Gintert's alleged sexual harassment is a matter of common interest among WCI employees and, therefore, Kolenich's statements enjoy a qualified privilege. SeeHorsley v. Wal-Mart, Inc. (Dec. 23, 1997), 4th Dist. No. 97CA17, 1997 Ohio App. LEXIS 5988, at *12 (qualified privilege attached to defamatory communications made by employees during the course and scope of their employment regarding possible sexual harassment by a co-worker). However, we also find that Gintert has raised a genuine issue of material fact whether these statements were made with actual malice. Gintert has consistently denied ever having made the sexually offensive statements alleged by Kolenich. Cf. Thompson v. Pub. Serv. Co.
(Colo. 1990), 800 P.2d 1299, 1306-1307 (summary judgment reversed where plaintiff raised a genuine issue of material fact whether an allegation of sexual harassment was made with malice by denying the allegation itself).
 {¶ 28} For the purposes of summary judgment, the moving party bears the burden of pointing to those portions of the record in which no genuine issue of material fact remains to be litigated. Dresher v.Burt, 75 Ohio St.3d 280, 292, 1996-Ohio-107. Kolenich's motion for summary judgment as to Gintert's slander claims was solely based on the argument that these statements were privileged. Kolenich raised no argument as to the other elements of slander. Since Gintert has raised an issue whether Kolenich's statements were made with actual malice, summary judgment could not be granted on the basis of privilege. Therefore, the trial court erred by granting summary judgment in Kolenich's favor as regards Gintert's defamation claims for Kolenich's statements accusing Gintert of sexual harassment. *Page 13 
 {¶ 29} We affirm the trial court's granting of summary judgment to Kolenich on Gintert's other claims for the reasons stated in the trial court's opinion. Gintert's claim of tortious interference with a contractual relationship is barred because it is based on statements made by Kolenich that are privileged. Moses v. Budd Co. (Dec. 3, 1993), 6th Dist. No. 92WD041, 1993 Ohio App. LEXIS 5724, at *11 ("we hold that the employees are immune from suit for interference with the supervisor's business relations unless the interference was accomplished entirely outside the employment setting"). As regards Gintert's claim for intentional infliction of emotional distress, we hold that Kolenich's statements to his co-workers that Gintert sexually harassed him do not rise to the level of extreme and outrageous conduct necessary to be actionable. Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,374-375.
 {¶ 30} For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Summerlin and Caicco as to all claims against them. We also affirm the trial court's grant of summary judgment in favor of Kolenich as to the infliction of emotional distress and tortious interference claims against him. We reverse summary judgment on Gintert's defamation claim against Kolenich and remand accordingly.
TIMOTHY P. CANNON, J., concurs,
CYNTHIA WESTCOTT RICE, P.J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.
[1] Republic Steel would become LTV, which, in turn, would become WCI.
[2] For list of jurisdictions finding such statements protected by an absolute privilege and jurisdictions finding such statements protected by a qualified privilege, see Annotation, Libel and slander: privileged nature of communications made in course of grievance or arbitration procedure provided for by collective bargaining agreement (1974), 60 A.L.R.3d 1041.
[3] This petition was signed by 53 WCI employees. On Weber's request, Caicco never filed the grievance. *Page 14