[Cite as *Ogle v. Hocking Cty.*, 2014-Ohio-5422.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

|  |  |  |
|---|---|---|
| MELANIE A. OGLE, et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | Case No. 14CA3 |
| v. | : | |
| | | <u>DECISION AND</u> |
| HOCKING COUNTY, et al., | : | <u>JUDGMENT ENTRY</u> |
| Defendants-Appellees. | : | RELEASED 12/8/2014 |

<u>APPEARANCES:</u>

Melanie A. Ogle and Charles R. Ogle, Rockbridge, Ohio, pro se Appellants.

Randall L. Lambert, Lambert Law Office, Ironton, Ohio, for appellee Lanny North.

Hoover, J.

{¶ 1} Melanie Ogle and Charles Ogle (collectively the "Ogles") appeal the judgment of the Hocking County Common Pleas Court that dismissed their claim of conspiracy to commit trespass asserted against defendant-appellee, Lanny North, following a bench trial. On appeal, the Ogles raise several assignments of error pertaining to the trial court's findings of fact and conclusions of law. The Ogles also contend that the trial court's judgment is against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} On September 10, 2010, Melanie Ogle filed a complaint as "Citizen of Hocking County." Several months later, the trial court allowed the Ogles to file an amended complaint. In the amended complaint, Melanie Ogle and Charles Ogle are listed as the plaintiffs instead of "Citizen of Hocking County."

{¶ 3} The Ogles filed the amended complaint against Hocking County and approximately 30 other defendants, including defendant-appellee, North, who is the Hocking County Sheriff. Other named defendants included various Hocking County elected officials, deputies of the Hocking County Sheriff's Office, and members of the Hocking County Prosecutor's Office. The amended complaint contained 10 counts in which the Ogles asserted multiple allegations against the defendants.

{¶ 4} Initially, some of the defendants were named in both their official and individual capacities. On June 17, 2011, the trial court held a hearing and expressed concern that there may be a conflict if one attorney was representing the defendants in both their individual and official capacities. Eventually, however, the Ogles dismissed the individual-capacity claims against every defendant, except for North.

{¶ 5} The defendants filed a motion to dismiss under Civ.R. 12(B)(6). The trial court granted the defendants' motion to dismiss because, according to the trial court, the Ogles failed to state a cause of action in any of the ten counts of their amended complaint. The Ogles, however, appealed the trial court's dismissal of their amended complaint, and this Court determined that the Ogles had pled a viable cause of action for civil conspiracy to commit a trespass (Count 3 of the amended complaint). *See Ogle v. Hocking Cty.*, 4th Dist. Hocking No. 11CA31, 2013-Ohio-597, ¶¶ 12-16. Thus, this Court affirmed the trial court's dismissal of the remaining counts in the amended complaint, but reversed its dismissal with respect to Count 3 and remanded the case to the trial court. *Id.* at ¶¶ 29, 30, 38.

{¶ 6} Following remand, the Ogles filed a motion for joinder of additional defendants and for leave to file an amended complaint. The remaining defendants, meanwhile, filed a motion for summary judgment. On September 4, 2013, the trial court denied the Ogles' motion,

granted the defendants' motion for summary judgment as to the allegations asserted against

Laina Fetherolf[1], and denied summary judgment concerning the allegations against North.

{¶ 7} A bench trial on the Ogles' remaining cause of action was held on October 15-16, 2013. Specifically at issue before the trial court, under Count 3 of the amended complaint, was whether North conspired with "Columbia Gas Transmission/Off-Duty Services", "Ohio Power/American Electric Power", and Fetherolf to trespass upon the Ogles' property.

{¶ 8} At trial, it was adduced that the Ogles once owned real property in Good Hope Township, Hocking County, Ohio. On November 5, 2009, the property was transferred by the Ogles to Ogleshill Farm, LLC. The property is a combination of wooded land and pastured fields. Donaldson Road, a township road, runs through the property. The property is also subject to an Oil, Gas & Storage Lease with Columbia Gas Transmission ("Columbia Gas"). The lease grants Columbia Gas "all the oil and gas in and under the [property], together with the exclusive right at all times to enter thereon and drill for, produce and market oil and gas, the right to store gas in all strata underlying said premises, the right to inject and remove gas regardless of the source thereof in and from all such strata, the right to conduct geophysical tests thereon, [and] the right to possess, use and occupy so much of said premises as is necessary and convenient for the purposes herein specified * * *."

{¶ 9} In 2008, Columbia Gas contacted the Ogles and informed them that it intended to construct a new gas storage well on the property, add pipeline on the property, and to construct an access road connecting the new well site to Donaldson Road. Columbia Gas offered the Ogles pre-construction damages, but also informed the Ogles that damages could be resolved post-

---

[1] Count 3 of the amended complaint alleged that North conspired with "Columbia Gas Transmission/Off-Duty Services", "Ohio Power/American Electric Power", and Fetherolf to trespass upon the Ogles' property. The claim was asserted against Fetherolf in her official capacity as the Hocking County Prosecuting Attorney. Columbia Gas Transmission/Off Duty Services and Ohio Power/American Electric Power were not named defendants in the amended complaint.

construction. The Ogles did not accept pre-construction damages. After lengthy negotiations between the Ogles and Columbia Gas over the location of the well and access road, Columbia Gas obtained a certificate of public convenience and necessity from the Federal Energy Regulatory Commission ("FERC"). The Ohio Department of Natural Resources ("ODNR") also granted Columbia Gas a permit to proceed with the drilling of the well. The Ogles sought a temporary and permanent injunction to prevent Columbia Gas from constructing the well, but the injunction was denied by the Hocking County Common Pleas Court.

{¶ 10} Columbia Gas entered the property on October 9, 2009, and conducted a survey of the property. Three days later Columbia Gas entered the property with heavy equipment and immediately began to construct the access road. The access road was graveled, and Columbia Gas staked the area around the access road, well site, and pipelines. Columbia Gas also placed a sign on the property informing all individuals to "stay within [the] staked boundaries of access road and well location." Construction of the access road, storage well, and the pipeline was completed in December 2009.

{¶ 11} Also in the summer of 2009, American Electric Power, dba Ohio Power, installed an electric power transmission line along Donaldson Road. Installation of the power line required that trees be cleared on the Ogles' property and that seven or eight wooden electric poles be placed on the property. The tree clearing and power line installation took place from late July 2009 through September 10, 2009. Prior to installation of the power line, Ohio Power had obtained an easement, via appropriation proceedings, to construct the line over and across the Ogles' property.

{¶ 12} For both utility projects, the Hocking County Sheriff's Office was hired to provide special duty security services. Special duty assignments allow members of the sheriff's office to

earn extra pay during off-duty hours by providing security services for private individuals and entities. Ohio Power sought security for their personnel and equipment, as well as traffic control along Donaldson Road. Columbia Gas, meanwhile, requested 24-hour security for their equipment and personnel, as well as the equipment and personnel of their subcontractors. During the special duty work for Ohio Power and Columbia Gas, the officers wore their sheriff issued uniforms and drove their marked sheriff cruisers.

{¶ 13} Captain Jerrod Alford of the Hocking County Sheriff's Office testified at trial that he was in charge of coordinating the special duty assignments with Ohio Power and Columbia Gas. Alford communicated directly with members of Ohio Power and Off Duty Services[2]. Alford discussed the special duty requests with North, and North ultimately gave permission for the special duty work. However, Alford stated that North had no direct communications with either Ohio Power or Columbia Gas. In regards to the Ohio Power special duty assignment, Alford testified that he advised all officers to stay on the township road. Likewise, for the Columbia Gas assignment, he advised all officers to stay within the access road and staked areas.

{¶ 14} Several other officers from the sheriff's office also testified at trial. Each officer testified that for the Ohio Power assignment, they remained stationed on the township road; and for the Columbia Gas assignment they remained parked on the access road. They all testified that they rarely left their cruisers during the special duty assignments and never went outside of the staked areas. The officers further testified that they were advised by Alford to stay on the access road during the Columbia Gas detail, and that the access road was easily identifiable because it had been freshly graveled. Each of the officers stated that they were hired to "keep the peace" and to provide security for the equipment left at the work sites.

---

[2] Off Duty Services was apparently hired by Columbia Gas to provide security services at the Ogles' property. Off Duty Services in turn entered into a special duty contract with the sheriff's office.

{¶ 15} On November 27, 2009[3], the Ogles sent to the Hocking County Sheriff's Office, via certified mail, a document titled "Notice to Leave." The Notice to Leave ordered all individuals employed by Off Duty Services, Inc., and the Hocking County Sheriff's Office "to cease further occupation" of the Ogles' property and "to leave said premises immediately[.]" The Notice to Leave was signed by Charles Ogle individually, and as agent for Ogleshill Farm, LLC. After receiving the Notice to Leave, the sheriff officers remained on the access road until the project was completed in December 2009.

{¶ 16} Charles Ogle testified that he did not believe that Columbia Gas, or its agents, had a right to enter his property because it had not paid him damages or otherwise settled a damage award prior to the start of construction of the storage well. He also testified that some of the trees cleared during the installation of the electric power line extended beyond the scope of Ohio Power's easement. He completed a sheriff's incident report in regards to Ohio Power's actions, but alleges that nothing was done by the sheriff's office. Two photographs were also introduced during Mr. Ogle's testimony, which purportedly depict a sheriff cruiser parked outside of the staked boundaries established by Columbia Gas. The photographs were admitted as evidence. On cross-examination, however, Mr. Ogle testified that he did not know the dates that the photographs were taken. He also testified that the access road flared at its junction with Donaldson Road to allow heavy equipment machinery to turn in and out of the property. He further testified that the presence of the sheriff officers made him feel aggravated, intimidated, anxious, and disparaged his character in the community.

{¶ 17} During Melanie Ogle's testimony, a video recording was played that allegedly depicted a sheriff's cruiser parked partially on Donaldson Road and partially on the Ogle

---

[3] The Notice to Leave is dated November 27, 2009. The trial testimony established that it was received by the Hocking County Sheriff's Office on November 28, 2009.

property. Mrs. Ogle testified that the video was taken in October 2009, and that she "walked off" and verified that the cruiser was outside of the staked boundaries. The video was not admitted as evidence and thus is not a part of the appellate record. She also testified that she saw sheriff officers outside of the staked area several times. The presence of the sheriff officers allegedly made Mrs. Ogle suffer anxiety, emotional distress, nervousness, fainting, shaking, and fearfulness of being alone or traveling alone.

{¶ 18} North also testified at trial. North testified that he authorized his employees to work the special duty assignments for Ohio Power and Columbia Gas/Off Duty Services after discussing the assignments with Alford. He also authorized the use of the cruisers for the special duty assignments. North testified that use of the cruisers was necessary for communication and safety purposes and is typical of special duty assignments.[4] North further testified that he never worked the special duty assignments himself, and had never been to the Ogles' property. He also testified that he had no direct communications with Ohio Power, Columbia Gas, or Off Duty Services. He acknowledged receipt of the Notice to Leave and indicated that he forwarded the document to Fetherolf, the county prosecutor, for legal advice. After receiving advice that the officers could remain on the property, he decided against terminating the special duty assignment. Finally, he noted that he had no malice or ill-will towards the Ogles and that the Ohio Power and Columbia Gas special duty assignments were handled no differently than past special duty assignments conducted by the sheriff's office.

{¶ 19} On December 18, 2013, the trial court filed a final judgment entry with findings of fact and conclusions of law dismissing the conspiracy to commit trespass claim with prejudice. The trial court noted, inter alia, that the Ogles failed to prove the requisite elements of the cause of action and that North was entitled to immunity pursuant to R.C. 2744.02.

---

[4] The county was reimbursed for use of the cruisers.

{¶ 20} Thereafter, the Ogles filed a timely notice of appeal and set forth the following

assignments of error:

First Assignment of Error:

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A
MATTER OF LAW TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN
FINDING THAT, "*THERE COULD BE NO CLAIMS BY THE PLAINTIFFS,
REGARDING CONSPIRACY TO COMMIT TRESPASS, AFTER NOVEMBER 5,
2009.*"

Second Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF RECORD TO THE
PREJUDICE OF PLAINTIFFS-APPELLANTS IN FINDING THAT, "*THE
PLAINTIFFS HAVE PREVIOUSLY DISMISSED THE CLAIM AGAINST
DEFENDANT LANNY NORTH IN HIS INDIVIDUAL CAPACITY. THUS, THE
REMAINING CLAIM ONLY CONCERNED THE DEFENDANT REGARDING
HIS OFFICIAL CAPACITY.*"

Third Assignment of Error:

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A
MATTER OF LAW AND TO THE PREJUDICE OF PLAINTIFFS-
APPELLANTS WHEN IT OMITTED CONSIDERATION OF ORC
2911.21(A)(3) AND (A)(4) WHICH ALSO CONSTITUTE AND DEFINE A
TRESPASS, IN ADDITION TO THE STATUTES CITED BY THE TRIAL
COURT.

Fourth Assignment of Error:

THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF
PLAINTIFFS-APPELLANTS BY INFERRING IN ITS JUDGMENT A LEGAL
EXISTENCE OF A COLUMBIA GAS EASEMENT ON PLAINTIFFS-
APPELLANTS' PROPERTY ON WHICH DEFENDANT-APPELLEE
NORTH'S DEPUTIES HAD AUTHORITY AND/OR PRIVELEGE TO
OCCUPY.

Fifth Assignment of Error:

THE TRIAL COURT'S JUDGMENT IN FAVOR OF DEFENDANT-
APPELLEE NORTH FOR CONSPIRACY TO COMMIT TRESPASS WAS
AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, SINCE THERE
WAS SUFFICIENT AND COMPETENT, CREDIBLE EVIDENCE TO
SUPPORT A JUDGMENT IN FAVOR OF PLAINTIFFS-APPELLANTS, AND
THAT DEFENDANT-APPELLEE NORTH'S AFFIRMATIVE DEFENSE OF

"AUTHORITY AND PRIVILEGE" WAS NOT PROVEN BY A PREPONDERANCE OF THE EVIDENCE.

Sixth Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF LAWAND TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN FINDING THAT DEFENDANT-APPELLEE NORTH WAS ENTITLED TO IMMUNITY.

{¶ 21} "Generally, we will uphold a trial court's judgment as long as the manifest weight of the evidence supports it – that is, as long as some competent and credible evidence supports it." *Bevens v. Wooten Landscaping, Inc.*, 4th Dist. Pike No. 11CA819, 2012-Ohio-5137, ¶ 12, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17; *Shemo v. Mayfield Hts.*, 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000); *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. "This standard of review is highly deferential and even 'some' evidence is sufficient to support a court's judgment and to prevent a reversal." *Id.*, citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997); *William v. Cole*, 4th Dist. Adams No. 01CA725, 2002-Ohio-3596, ¶ 24.

{¶ 22} "Although appellate courts will ordinarily afford great deference to a trial court's factual findings, appellate courts do not afford any deference to a trial court's application of the law. Instead, appellate courts must independently review whether a trial court properly applied the law." *Id.* at ¶ 13, citing *Lovett v. Carlisle*, 179 Ohio App.3d 182, 2008-Ohio-5852, 901 N.E.2d 255, ¶ 16 (4th Dist.); *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010-Ohio-5293, ¶ 21.

{¶ 23} In their first assignment of error, the Ogles contend that the trial court erred in determining that they had no viable cause of action after November 5, 2009. Specifically, the trial court noted in its final judgment entry, that while the Ogles had established ownership of the property prior to November 5, 2009, the evidence adduced at trial had also established that the

property was transferred to Ogleshill Farms, LLC, on November 5, 2009. Thus, the trial court concluded that, "based upon this transfer, there could be no claims by the Plaintiffs, regarding conspiracy to commit trespass, after November 5, 2009."

{¶ 24}  At trial, it was discovered that the Ogles transferred the property to Ogleshill Farm, LLC, on November 5, 2009; in the midst of the Columbia Gas project and the sheriff office's occupation of the property. Both Charles and Melanie Ogle testified that the property was transferred to the limited liability company. A general warranty deed was also admitted into evidence establishing the transfer to Ogleshill Farm, LLC, on November 5, 2009. Thus, the trial court's conclusion that the property was transferred to Ogleshill Farm, LLC, on November 5, 2009, is supported by competent and credible evidence.

{¶ 25} Furthermore, the Ogles were not the real parties in interest and lacked standing to assert any claims after the property was transferred on November 5, 2009.  *See Adams v. Pitorak & Coenen Invests., Ltd.*, 11th Dist. Geauga No. 2011-G-3019, 2012-Ohio-3015, ¶ 42 (finding that the real party in interest with standing to assert a trespass claim was the titleholder of the real property). Following transfer of the property, the Ogles were no longer owners of the property. Rather, Ogleshill Farm, LLC, was the property owner after November 5, 2009. Even if we were to assume that the Ogles are the sole members of Ogleshill Farm, LLC, they still do not have standing to sue on its behalf: "A 'membership interest' in a limited liability company * * * does not confer upon the 'member' any specific interest in company property, whether personal property or real property. Such property is, instead, held and owed [sic] solely by the company." *In re Liber*, Bankr.N.D.Ohio No. 08-37046, 2012 WL 1835164, *4 (May 18, 2012); *see also* R.C. 1705.34. And, as North points out in his appellate brief, a limited liability company is a legal entity capable of suing and being sued in Ohio. *See* R.C. 1705.03(A). Accordingly, the trial

court did not err as a matter of law in determining that the Ogles were precluded from pursuing their claim of conspiracy to commit trespass against North for any actions taking place after November 5, 2009. The first assignment of error is overruled.

{¶ 26} In their second assignment of error, the Ogles contend that the trial court erred in finding that they had previously dismissed the conspiracy to commit trespass claim against North in his individual capacity, and that only a claim against North in his official capacity remained during trial.

{¶ 27} In the case sub judice, the trial court did find in its final judgment entry that the Ogles had dismissed their claim against North in his individual capacity. The Ogles are also correct that the record does not support such a finding.  As mentioned above, the Ogles dismissed the individual-capacity claims against every defendant, except for North. For whatever reason, however, throughout the proceedings below defense counsel acted as though the individual-capacity claim against North had also been dismissed. For instance, in the motion for summary judgment, defense counsel wrote that the Ogles "had dismissed all of the Hocking County Defendants in their individual capacity." [Memorandum in Support of Motion for Summary Judgment, p. 2.] Likewise in its trial memorandum, defense counsel asserted that "the Plaintiff's dismissed all of the Hocking County Defendants in their individual capacities, which included Defendant Lanny North." [Trial Memorandum in Support of Sovereign Immunity, p. 2.] And at trial, defense counsel again stated that "all of the individual defendants were dismissed at some point in this case. Mr. North is here today in his official capacity as sheriff * * *." [Trial Tr., p. 401.]

{¶ 28} Despite being aware of North's wrongful assumption that all defendants had been dismissed in their individual capacities, the Ogles never objected to the wrongful assumption or

attempted to correct the record. "It is a cardinal rule of appellate procedure that 'an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected.' "*Woody v. Woody,* 4th Dist. Athens No. 09CA34, 2010–Ohio–6049, ¶ 26*, quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982). "In the absence of a proper objection, the party waives all but plain error." *Id*. "In the civil context, the plain error doctrine applies only when an error 'seriously affects the basic fairness, integrity, or public reputation of the judicial process.' " *Id*., quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997).

{¶ 29} By acquiescing to the representations made to the trial court, the Ogles have waived the opportunity to raise the issue on appeal. The trial court's finding also does not constitute plain error. The evidence adduced at trial did not indicate that North ever acted in his personal capacity with regards to the special duty assignments at the Ogles' property. Rather the evidence established that special duty assignments are not uncommon, that North never communicated directly with anyone from Ohio Power or Columbia Gas, and he has not even been to the Ogles' property. Thus, the error did not seriously affect the fairness or outcome of the judicial proceedings. Accordingly, we overrule the Ogles' second assignment of error.

{¶ 30} In their third assignment of error, the Ogles contend that the trial court "abused its discretion" and "erred as a matter of law" when it failed to consider whether North and the other alleged co-conspirators had violated Ohio's criminal trespass statute.

{¶ 31} In its final judgment entry, the trial court noted that in order to succeed on their civil conspiracy claim, the Ogles needed to prove that there was in fact a trespass upon their property.[5] The trial court then defined trespass as follows:

> To constitute a trespass, a plaintiff must prove an unauthorized, intentional act and entry upon land in the possession of another. Ohio Revised Code § 2911.21 defined a criminal trespass as knowingly entering, or remaining on, the land of another without privilege to do so or knowingly entering, or remaining on, the land of another, when the use of which is lawfully restricted to certain persons, purposes, modes, or hours, and the offender knows the offender is in violation of any such restriction or is reckless in that regard.

{¶ 32} On appeal, the Ogles argue that the trial court wrongfully omitted from its consideration, subsections (A)(3) and (A)(4) of R.C. 2911.21, which state as follows:

> (A) No person, without privilege to do so, shall do any of the following: * * *

> (3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

> (4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either.

---

[5] To succeed on a civil conspiracy claim, the plaintiff must prove: (1) a malicious combination; (2) involving two or more persons; (3) causing injury to persons or property; and (4) the existence of an unlawful act independent from the conspiracy itself. *Ogle*, supra, at ¶ 14. Here the alleged unlawful act was the trespass upon the Ogles' property.

The Ogles contend that the trial court's failure to consider subsections (A)(3) and (A)(4) of the criminal trespass statute was prejudicial and denied them due process of law.

{¶ 33} As an initial matter, we note that the definition of trespass used by the trial court was provided by the Ogles at trial during their final argument to the court. [*See* Trial Tr., p. 431.] The Ogles did not request that the trial court consider the criminal trespass statute. Thus, even if arguably the trial court should have considered the statute in making its ruling, under the invited error doctrine parties cannot take advantage of errors they invite or induce the trial court to make. *Dolan v. Glouster*, 4th Dist. Athens Nos. 11CA18, 12CA1, 11CA19, 12CA6, 11CA33, 2014-Ohio-2017, ¶ 67; *see also State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27 (Under invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced the court to make."); *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 10 (even plain error is waived where party invited the error).

{¶ 34} Furthermore, as discussed more fully below, the record evidence establishes that the utility companies and the sheriff officers were authorized to be on the Ogles' property and were not "without privilege". Thus, the Ogles were not prejudiced by the trial court's failure to fully consider the criminal trespass statute and we may disregard it as harmless error. *See* Civ.R. 61. Accordingly, we overrule the Ogles' third assignment of error.

{¶ 35} In their fourth assignment of error, the Ogles contend that the trial court erred "by inferring in its judgment a legal existence of a Columbia Gas easement on [their] property on which [the sheriff officers] had authority and/or privilege to occupy." In particular, the Ogles allege that because they did not agree on construction damages prior to Columbia Gas entering

the property, or agree to wait to settle damages until after construction was complete, Columbia Gas and its agents had no authority or privilege to occupy the property. We disagree.

{¶ 36} Rather, the record evidence supports the trial court's conclusion that Columbia Gas, and it agents, had a right to enter the Ogles' property for the purpose of enlarging its natural gas facilities. For instance, Charles Ogle acknowledged that Columbia Gas had received a certificate of public convenience and necessity from the FERC and a permit from the ODNR to proceed with their plan to expand their natural gas facilities. Moreover, the Ogles had sought an injunction to halt construction of the storage well, which was denied. It was not until after the injunction was denied that Columbia Gas and the sheriff officers entered the Ogles' property. Perhaps most importantly, the Oil, Gas & Storage Lease which encumbers the property, and was admitted as a trial exhibit, grants Columbia Gas "the right to possess, use and occupy so much of [the property] as is necessary and convenient for the purposes" stated in the agreement. In light of the foregoing, competent and credible evidence supports the trial court's conclusion that Columbia Gas and its agents were authorized or permitted to enter the property for purposes of completing the gas operation. Accordingly, the Ogles' fourth assignment of error is overruled.

{¶ 37} In their fifth assignment of error, the Ogles contend that the trial court's final judgment entry is against the manifest weight of the evidence. In essence, the Ogles contend that the evidence supports a conclusion that North conspired with Ohio Power, Columbia Gas, and the Hocking County Prosecutor's Office to commit a trespass of their property.

{¶ 38} To succeed on a civil conspiracy claim, the claimant must prove: (1) a malicious combination; (2) involving two or more persons; (3) causing injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Ogle*, 2013–Ohio–597, at ¶ 14.

{¶ 39} " 'An underlying tort is necessary to give rise to a cause of action for conspiracy.' " *Cook v. Kudlacz,* 2012–Ohio–2999, 974 N.E.2d 706, ¶ 90 (7th Dist.), quoting *Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL–CIO v. Madison Local School Dist. Bd. of Edn.,* 190 Ohio App.3d 254, 2010–Ohio–4942, 941 N.E.2d 834, ¶ 62 (11th Dist.). And, "there must be actual damages attributable to the conspiracy in addition to those damages caused by the underlying tort in order for the plaintiff to recover from the conspiracy." *Stiles v. Chrysler Motors Corp.*, 89 Ohio App.3d 256, 266, 624 N.E.2d 238 (6th Dist.1993). Here, the Ogles contend that the unlawful act underlying their civil conspiracy claim is trespass. "The elements of civil trespass are (1) an unauthorized intentional act and (2) entry upon land in the possession of another." *DiPasquale v. Costas,* 186 Ohio App.3d 121, 2010–Ohio–832, 926 N.E.2d 682, ¶ 102 (2d Dist.).

{¶ 40} In the case sub judice, the evidence does not support the conclusion that North, the sheriff officers, or any of the other alleged co-conspirators committed a trespass upon the Ogles' property. Rather, the evidence shows that Ohio Power, Columbia Gas, and the sheriff officers were authorized and permitted to enter the property. Furthermore, there is no evidence that anyone from the Hocking County Prosecutor's Office was ever at the Ogles' property.

{¶ 41} As discussed above, Columbia Gas was authorized to enter the property pursuant to its lease agreement, FERC certificate, and ODNR permit. Columbia Gas also waited to enter the property until the Hocking County Common Pleas Court ruled on the Ogles' request for an injunction. Ohio Power, meanwhile, had obtained an easement via appropriation proceedings prior to entering the Ogles' property to install the electric line. The sheriff officers, meanwhile, were agents of Ohio Power and Columbia Gas/Off Duty Services.

{¶ 42} While there was conflicting evidence regarding whether the sheriff officers

entered portions of the property they were not authorized to access, the trial court was in the best position to judge the credibility of the evidence. *Holiday Haven Members Assn. v. Paulson*, 4th Dist. Hocking No. 13CA13, 2014-Ohio-3902, ¶ 17 ("issues of evidence weight and credibility are generally left to the trier of fact to decide"). The sheriff officers testified that during the Ohio Power assignment they always parked their cruisers on Donaldson Road. During the Columbia Gas assignment, the officers testified that they parked on the access road and rarely left their cruisers. The Ogles presented two photographs purportedly depicting a cruiser parked outside of the staked access road, but there is no way to verify whether the photographs were taken before or after the property had been transferred to the LLC. Furthermore, we note that the video introduced during Melanie Ogle's testimony, which purportedly depicts a cruiser parked half way on Donaldson Road, and half way on the Ogles' property, does not itself demonstrate a trespass of the property. Notably, there was no evidence presented to establish that the cruiser was intentionally parked in a manner so as to encroach upon the property. Simply put, there exists credible evidence to support the trial court's conclusion that the utility companies and sheriff officers were authorized to enter certain portions of the property and that they did not intentionally enter areas of the property that they were not authorized to enter.

{¶ 43} In their brief, the Ogles argue that Ohio Power did not comply with township permitting requirements and that Ohio Power violated the law by blocking Donaldson Road during installation of the power line. These allegations, however, are not relevant to the case at hand and offer no indication that the entities conspired to trespass upon their property. The Ogles assertion that the sheriff's office was not permitted by law to conduct special duty assignments for utility companies is also not relevant to their claim for conspiracy to commit trespass. Furthermore, the utility companies and sheriff officers were not required to leave the property

just because the Ogles objected to them being there; rather, the entities were authorized to be on the property for the reasons discussed above.

{¶ 44} The evidence presented at trial also does not support the Ogles assertion that North, Ohio Power, Columbia Gas, and Fetherolf entered into a "malicious combination." The "malice" in a "malicious combination" involves a state of mind under which a person commits a wrongful act on purpose, without reasonable or lawful excuse, to the injury of another. *Merchants Natl. Bank v. Overstake,* 4th Dist. Highland No. 11CA18, 2012–Ohio–6309, ¶ 13. The Ogles presented no evidence to suggest that North acted in concert with any of the other alleged co-conspirators to purposefully and intentionally cause them injury by trespassing on their property. In fact, North testified that he never directly communicated with Ohio Power, Columbia Gas, Off Duty Services, or any of their representatives or agents. His only relevant communication with Fetherolf was to seek her legal advice upon receiving the Notice to Leave. At all times the sheriff officers and utility companies entered the property with the authority to do so. It was also revealed at trial that the sheriff officers were instructed to stay within the township roadway and the areas surveyed and staked by Columbia Gas. Finally, North testified that the Ohio Power and Columbia Gas assignments were treated no differently than any other special duty assignments performed by the sheriff's office.

{¶ 45} Upon reviewing the record, we find that the trial court's dismissal of the Ogles' conspiracy to commit trespass claim is supported by competent and credible evidence. In other words, the trial court's final judgment entry is not against the manifest weight of the evidence. Accordingly, the Ogles' fifth assignment of error is overruled.

{¶ 46} In their sixth and final assignment of error, the Ogles contend that the trial court erred as a matter of law in finding that North was entitled to immunity. The Ogles' argument in

support of this assignment of error is a single sentence long, cites no authority, and makes no reference to the record.

{¶ 47} App.R. 16(A)(7) provides: "The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." " 'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out.' " *Thomas v. Harmon,* 4th Dist. Lawrence No. 08CA17, 2009–Ohio–3299, ¶ 14, quoting *State v. Carman,* 8th Dist. Cuyahoga No. 90512, 2008–Ohio–4368, ¶ 31. " 'It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.' " (Alteration sic.) *Catanzarite v. Boswell,* 9th Dist. Summit No. 24184, 2009–Ohio–1211, ¶ 16, quoting *Kremer v. Cox,* 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist.1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.,* 4th Dist. Gallia No. 07CA4, 2008–Ohio–2194, ¶ 12; *accord Oldacre v. Oldacre,* 4th Dist. Ross No. 08CA3073, 2010–Ohio–1651, ¶ 35; *see also* App.R. 12(A)(2).

{¶ 48} Here, the Ogles' argument in support of their sixth assignment of error consists of a single conclusive statement and is completely devoid of any citations to case law or statutes on the topic of immunity. Pursuant to App.R. 16(A)(7) we may disregard this assignment of error. Moreover, having concluded above that the trial court's judgment was properly granted because the Ogles failed to prove their conspiracy claim, we may also decline to address this assignment

of error due to mootness. App.R. 12(A)(1)(c). Accordingly, the Ogles' sixth assignment of error

is overruled.

{¶ 49} Having found no merit in the assignments of error, we hereby affirm the trial

court's judgment.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellants shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.

For the Court

By:_____
                Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.